UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12CV01066 ERW |
| | ) | |
| SHADE TREE SERVICES, CO., and | ) | |
| JEFF BISHOP, | ) | |
| | ) | |
| Defendants. | ) | |

# **PRELIMINARY MEMORANDUM AND ORDER**[1]

This matter comes before the Court on Plaintiff's Motion *in Limine* to Exclude Evidence [ECF No. 65]; Defendants' Motion *in Limine* No. 1 to Exclude the Testimony of Dr. Karen Tabak [ECF No. 69]; Defendants' Motion *in Limine* No. 2 to Exclude Evidence of, and References to, Front-Pay Damages [ECF No. 71]; Defendants' Motion *in Limine* No. 3 to Exclude Coworker Personnel Records [ECF No. 73]; Defendants' Motion *in Limine* No. 4 to Exclude Deposition Transcripts [ECF No. 75]; Defendants' Motion *in Limine* No. 5 to Exclude Plaintiff's Handwritten Notes [ECF No. 77]; Defendants' Motion *in Limine* No. 6 to Exclude Statements Relating to Plaintiff's Dismissed Defamation Claim [ECF No. 79]; Plaintiff's Second Motion *in Limine* to Exclude Evidence [ECF No. 86]; and Defendants' Motion *in Limine* No. 7 to Exclude Untimely-Disclosed Expert Opinions [ECF No. 91]. The Court held a Pretrial Conference for this case on Tuesday, August 13, 2013, and the Parties addressed these pending Motions.

---

[1]This Order may be amended after receipt of Plaintiff's responsive brief, which will not be filed until 5:00 p.m. on Friday, August 16, 2013. This Preliminary Memorandum and Order is filed on this date to give guidance to the parties in the trial, which begins at 9:00 a.m. on Monday, August 19, 2013.

## I. PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE

Plaintiff's Motion *in Limine* to Exclude Evidence seeks to exclude eight matters. The Court will address each matter separately.

### A. Evidence Concerning Medical Treatment Sought by Plaintiff After His Termination in October 2011

Plaintiff argues that Defendants should not be permitted to introduce evidence concerning medical treatment sought by Plaintiff after his termination in October 2011. Plaintiff maintains this evidence lacks relevance, because Defendants could not possibly have relied upon it at the time of their employment decisions. Defendants' sole objection is that if Plaintiff seeks emotional distress damages under the Missouri Human Rights Act (MHRA), Defendants should be permitted to introduce after-acquired evidence concerning Plaintiff's mental health.

Because Plaintiff has agreed not to pursue emotional distress damages, Plaintiff's motion to exclude evidence concerning post-termination medical treatment will denied as moot.

### B. Evidence Relating to Any Information Defendants Learned About Plaintiff Subsequent to His Termination in October 2011

Plaintiff seeks to exclude evidence relating to any information Defendants learned about Plaintiff subsequent to his termination. The contested evidence falls into two categories: (1) after-acquired evidence of Plaintiff's hydrocodone addiction and (2) evidence concerning Plaintiff's post-Shade Tree employment.

#### 1. After-Acquired Evidence of Plaintiff's Hydrocodone Addiction

Plaintiff moves the Court to exclude after-acquired evidence of his hydrocodone addiction. At issue in Plaintiff's Motion is whether the MHRA bars recovery by individuals who become addicts due to a medical condition that necessitates lawful use of a controlled substance. The answer to this question hinges on the meaning of § 213.010(4), which states that "[f]or purposes of this

chapter, the term 'disability' does not include current, illegal use of or addiction to a controlled substance as such term is defined by [§ 195.010.]"

Plaintiff argues that any after-acquired evidence of his hydrocodone addiction is irrelevant, because, contrary to Defendants' contentions, § 213.010(4) of the Missouri Human Rights Act (MHRA) allows certain drug addictions to qualify as "disabilities." Specifically, Plaintiff claims that while § 213.010(4) excludes addictions resulting from *illegal* use of controlled substances, it embraces a potential disability where an individual becomes an addict resulting from a medical condition requiring lawful use of a controlled substance. Plaintiff maintains that the MHRA must be read as a whole, and he notes that another section of the Act, § 195.010(1), defines the term "addict" as "a person who habitually uses one or more controlled substances ... and who does not have a medical need for such drugs[.]" He further contends that interpreting the MHRA as excluding all addictions to controlled substances would lead to "absurd results," as such an interpretation would preclude countless individuals with legitimate medical problems from recovering under the MHRA. Plaintiff concludes that because he has a potential disability under the MHRA, the only drug-related evidence that remains relevant is that which could have affected Defendants' state of mind when they discharged him. Plaintiff therefore seeks to exclude any after-acquired evidence of his hydrocodone addiction.

Defendants counter that the plain language of § 213.010(4) excludes all addictions to controlled substances from the definition of "disability," even if the addiction results from a medical need for the drug. Defendants interpret the word "illegal" as modifying only "use," not "addiction to a controlled substance." In support of this contention, they note that in § 213.010(4)(a)-(c), the

legislature clearly separates "illegal use" and "controlled substance."[2] Defendants also argue that Plaintiff's reliance on the definition of "addict" in § 195.010(1) is misplaced for two reasons. First, they note that the word "addict" fails to appear in § 213.010(4). Second, they maintain that the legislature provides an alternative definition of "addict" that Plaintiff overlooks: "a person ... who is so far addicted to the use of such drugs as to have lost the power of self-control with references to his addiction." § 195.010(1). Additionally, Defendants contend that a survey of analogous case law reveals that courts regularly exclude all addictions to controlled substances from disability statutes similar to § 213.010(4).[3] Finally, Defendants argue that even if the Court adopts Plaintiff's interpretation of § 213.010(4), Defendants should be allowed to introduce after-acquired evidence of Plaintiff's addiction to show that his post-rehab hydrocodone use was neither medically necessary nor compliant with a doctor's directions.

When interpreting Missouri law, "[t]he goal of statutory analysis is to ascertain the intent of the legislature, as expressed by the words of the statute." *United Pharmacal Co. of Mo., Inc. v. Mo.*

---

[2]MHRA § 213.010(4)(a)-(c) reads as follows:

[A] person may be considered to have a disability if that person:

(a) Has successfully completed a supervised drug program and is no longer engaging in the illegal use of, and is not currently addicted to, a controlled substance or has otherwise been rehabilitated successfully and is no longer engaging in such use and is not currently addicted;

(b) Is participating in a supervised rehabilitation program and is no longer engaging in illegal use of controlled substances; or

(c) Is erroneously regarded as currently illegally using, or being addicted to, a controlled substance.

[3]The Court notes that the cases cited by Defendants fail to establish that other jurisdictions have refused to recognize a disability where an addiction results from a medical need for lawfully prescribed medication. The Court does not base its decision today on the cases cited by Defendants.

*Bd. of Pharmacy*, 208 S.W.3d 907, 909 (Mo. 2006) (en banc). When the plain language of the statute does not lend itself to a single meaning, the Court must turn to traditional methods of statutory construction, including examination of the act as a whole. *Id.* at 911-12. "Statutory construction should not be hyper technical but instead should be reasonable, logical, and should give meaning to the statutes." *In re Boland*, 155 S.W.3d 65, 67 (Mo. 2005) (en banc).

In light of the foregoing, the Court finds that the MHRA precludes all addictions to controlled substances from the definition of "disability." The disability exclusion in § 213.010(4) arguably lends itself to more than one meaning, as the legislature could have intended for "illegal" to modify only "use," or it could have intended "illegal" to modify both "use" and "addiction to a controlled substance." Thus, the Court turns to recognized principles of statutory construction to determine the legislature's intent. Examining the MHRA as a whole, §§ 213.010(4)(a)-(c) and 195.010(1) both give weight to the notion that the legislature intended to separate "illegal use" from "addiction to a controlled substance." Specifically, § 213.010(4)(a)-(c) refers to "illegal use" and "addiction to a controlled substance" as separate bars to recovery under the MHRA, and § 195.010(1) provides an additional definition of "addict" that includes individuals "who [are] so far addicted to the use of [controlled substances] as to have lost the power of self-control with reference to [their] addictions." Tellingly, this definition fails to require that an addict use drugs "illegally." The Court therefore finds that the reasonable, logical construction of § 213.010(4) bars recovery by all individuals addicted to controlled substances.

As a result, after-acquired evidence of Plaintiff's hydrocodone addiction is relevant to whether Plaintiff had a "current" addiction to a controlled substance under the MHRA, and Plaintiff's motion to exclude this evidence is denied. In any event, such evidence is relevant to

whether Plaintiff's hydrocodone use was medically necessary and compliant with a doctor's directions.

### 2. Evidence Concerning Plaintiff's Post-Shade Tree Employment

Plaintiff's motion seeks to exclude evidence pertaining to Plaintiff's post-Shade Tree employment. Plaintiff claims this information lacks relevance, because it could not have impacted Defendants' employment decisions. Defendants counter that this evidence is relevant both to calculating actual damages and to Plaintiff's duty to mitigate damages. Specifically, Defendants assert that Plaintiff's discharge from post-Shade Tree employment sheds light on whether Plaintiff reasonably maintained adequate employment after his termination.

The Court finds that this evidence is relevant both to the actual loss suffered by Plaintiff and to Plaintiff's duty to mitigate damages. As a result, evidence concerning Plaintiff's post-Shade Tree employment will be admissible at trial.

### C. Evidence Relating to Plaintiff's Marital Strife

Plaintiff argues that the Court should not allow Defendants to refer to Plaintiff's family discord or marital strife, because such references lack relevance and would merely confuse the jury and waste time. Defendants respond that a limited reference to Plaintiff's marital strife will help establish that Plaintiff failed to give proper notice of his medical leave under the Family and Medical Leave Act (FMLA). While Plaintiff claims he telephoned his supervisor, Jeff Bishop, the morning he checked into rehab, Defendants plan to have Bishop testify that he first learned of Plaintiff's medical leave when Plaintiff's upset wife telephoned Bishop a week later.

The Court finds that the telephone call from Plaintiff's wife to Bishop is relevant to whether Plaintiff provided proper notice of his medical leave under the FMLA. Thus, at trial, Bishop may testify that he first received notice of Plaintiff's medical leave by a telephone call from Plaintiff's

wife. While Bishop may testify that Plaintiff's wife was upset during the telephone call, Defendants may not otherwise refer to Plaintiff's marital strife and may not offer evidence relating to any actual or contemplated divorce or separation Plaintiff's wife may have divulged to him.

**D.     Evidence Relating to Plaintiff's Chapter 7 Bankruptcy Filing**

Plaintiff states that Defendants should not be permitted to introduce evidence relating to Plaintiff's post-termination Chapter 7 bankruptcy filing, because it lacks relevance and would unfairly prejudice him. Defendants argue that the bankruptcy filing is relevant, because in the bankruptcy petition, Plaintiff admits that he worked for Asplundh Tree Expert Company as a general foreman in January 2012. Defendants assert that this admission contradicts Plaintiff's deposition testimony in the instant case and affects any potential damages calculation.

The Court finds that Plaintiff's admission in the bankruptcy petition is relevant both to his credibility and to damages. Defendants may introduce Plaintiff's bankruptcy filing admission concerning his post-Shade Tree employment, but must redact any documents that reflect they are bankruptcy filings.

**E.     Evidence Relating to Substance Abuse by Plaintiff's Parents**

Plaintiff seeks to exclude any mention concerning his parents' possible substance abuse. Plaintiff argues such evidence is irrelevant and highly prejudicial. Defendants have agreed that they do not intend to use this evidence. Thus, Plaintiff's motion to exclude any mention concerning his parents' substance abuse is denied as moot.

**F.     Evidence Relating to Plaintiff's Arrest**

Plaintiff moves the Court to exclude evidence of his arrest at age nineteen, because such evidence is irrelevant, highly prejudicial, and improper character evidence. Defendants have agreed

that they do not intend to use this evidence. Accordingly, Plaintiff's motion to exclude any reference to his arrest is denied as moot.

      **G.**    **Evidence Relating to Plaintiff's Use of Tranquilizers and Illegal Substances**

Plaintiff argues that the Court should exclude evidence concerning Plaintiff's use of tranquilizers and illegal substances to cope with withdrawal symptoms from his addiction to hydrocodocone. Plaintiff claims such information lacks relevance, because there exists no evidence that Defendants knew or relied upon it in their employment decisions. Defendants reply that this information demonstrates the severity of Plaintiff's addiction and his difficulty in overcoming it.

In light of the Court's ruling on the meaning of § 213.010(4), the Court finds that this evidence is relevant to whether Plaintiff had a "current" addiction to a controlled substance under the MHRA. Accordingly, Plaintiff's motion to exclude this evidence is denied.

      **H.**    **Evidence Relating to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment**

Plaintiff states that the Court should not allow Defendants to refer to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, which Plaintiff claims lacks relevance. Defendants have agreed that they do not intend to use this evidence at trial. Thus, Plaintiff's motion to exclude Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment will be denied as moot.

**II.**    **DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE THE TESTIMONY OF DR. KAREN TABAK**

Defendants seek to exclude the expert testimony of Dr. Karen Tabak, who would testify concerning Plaintiff's alleged front-pay and back-pay damages.

A.    **Front-Pay Damages**

Defendants argue that Dr. Tabak should not be permitted to testify concerning potential front-pay damages, because front-pay is a disfavored remedy available only when reinstatement is infeasible. Alternatively, Defendants assert that front-pay damages constitute equitable relief, appropriately decided only by the Court. Plaintiff agrees that front-pay is an equitable issue for the Court. Accordingly, the Court will determine the extent of Plaintiff's front pay relief, if any, in a separate proceeding after the jury reaches its conclusions.

B.    **Back-Pay Damages**

Defendants also claim that Dr. Tabak's testimony concerning back-pay damages should be excluded for several reasons. First, Defendants claim that Dr. Tabak's testimony, which she supplemented on July 26, 2013, unfairly prejudices Defendants, because Defendants lacked any meaningful opportunity to depose Dr. Tabak on her July report. Second, Defendants claim that Dr. Tabak's back-pay testimony constitutes improper expert testimony, because it pertains to a matter of common knowledge and experience. Finally, Defendants claim that Dr. Tabak's testimony contains foundational problems, because it fails to consider Plaintiff's post-Shade Tree earnings[4] and it arbitrarily values Plaintiff's Shade Tree benefits at 20 percent of his salary.

Plaintiff maintains that the supplemental report would not prejudice Defendants, because Dr. Tabak's supplemental damages calculation is less than her original calculation. Additionally, Plaintiff asserts that expert testimony will aid the jury in determining the present value of Plaintiff's losses and therefore falls outside the realm of common knowledge and experience.

---

[4] Since Defendants filed their Motion *in Limine* No. 1 to Exclude the Testimony of Dr. Karen Tabak, Plaintiff has sought to introduce a newly supplemented version of her report, which accounts for Plaintiff's post-Shade Tree employment. Defendants have moved to exclude this newly supplemented version in their Motion *in Limine* No. 7 to Exclude Untimely-Disclosed Expert Opinions, discussed in Section IX of this Order.

The Court will allow Dr. Tabak to testify as to back-pay. The Court finds that expert testimony will aid the jury in determining the present value of any potential damages, and it notes that experts routinely testify on the issue of back-pay. *See, e.g.*, *Salistros v. Chrysler Corp.*, 306 F.3d 562, 571 (8th Cir. 2002); *Bjerke v. Nash Finch Co.*, No. Civ. A3-98-132, 2000 WL 33146937, at *3 (D. N.D. Dec. 4, 2000); *Regineli v. Motion Indus., Inc.*, 987 F. Supp. 1137, 1140 (1997). Defendants may appropriately challenge Dr. Tabak's factual assumptions and methodology through cross-examination. *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 955 (8th Cir. 2007); *Howerton v. Blitz USA, Inc.*, No. 05-1075-CV-W-FJG, 2007 WL 4615946, at *5 (W.D. Mo. Dec. 28, 2007).

## III. DEFENDANTS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE EVIDENCE OF, AND REFERENCES TO, FRONT-PAY DAMAGES

Defendants maintain that the Court should exclude any evidence relating to front-pay damages, because front-pay is a disfavored remedy appropriate only when reinstatement is infeasible. Defendants also assert that front-pay is an equitable remedy reserved solely to the Court. Plaintiff agrees that front-pay is an equitable issue for the Court. Accordingly, the Court will determine the extent of Plaintiff's front pay relief, if any, in a separate proceeding after the jury reaches its conclusions.

## IV. DEFENDANTS' MOTION *IN LIMINE* NO. 3 TO EXCLUDE COWORKER PERSONNEL RECORDS

Defendants seek to exclude personnel files and exhibits concerning eleven Shade Tree employees who were laid off with Plaintiff in October 2011. Defendants argue that the personnel files contain hundreds of pages of irrelevant and confusing information. Additionally, Defendants claim that the employees had greater seniority than Plaintiff, and did not have the same supervisor or engage in conduct similar to Plaintiff's. Plaintiff maintains he must use this evidence to

demonstrate discriminatory treatment, because unlike several of these employees, he was not rehired by Defendants.

The Court will allow Plaintiff to present this evidence in a way that minimizes irrelevant and confusing information. Specifically, Plaintiff may offer evidence of (1) the date that Defendants laid off these employees, (2) the date that Defendants rehired these employees, if at all, and (3) the position to which Defendants restored the rehired employees. On cross examination, Defendants may rebut any allegations Plaintiff makes that he and the other employees were similarly situated.

## V. DEFENDANTS' MOTION *IN LIMINE* NO. 4 TO EXCLUDE DEPOSITION TRANSCRIPTS

In their Motion, Defendants state that the depositions of six witnesses —Dr. Karen Tabak, Thomas Beerman, Dave Ferguson, Jim Risch, Jeff Bishop, and Plaintiff—should be excluded. First, Defendants assert that the majority of Plaintiff's designated depositions violate this Court's Amended Case Management Order [ECF No. 22]. Alternatively, Defendants argue that each of the depositions is separately inadmissible for a variety of reasons. The parties now agree, however, that these depositions are appropriate only for impeachment, and Defendant's Motion is therefore denied as moot.

## VI. DEFENDANTS' MOTION *IN LIMINE* NO. 5 TO EXCLUDE PLAINTIFF'S HANDWRITTEN NOTES

Defendants move to exclude Plaintiff's handwritten notes, which are dated in September and October 2011 and describe various incidents regarding Plaintiff's employment. Defendants assert that these notes constitute inadmissible hearsay, because Plaintiff will offer them for their truth, Plaintiff does not offer them against a party, and the notes do not fall within any hearsay exception. Plaintiff counters that the notes qualify as present sense impressions under Federal Rule of Evidence 803(1), because the notes describe events that occurred while or immediately after Plaintiff perceived

11

them. Alternatively, Plaintiff argues that the notes could qualify as recorded recollections under Federal Rule of Evidence 803(5), if Plaintiff cannot recall the subject matter of the notes at trial.

The Court will review the handwritten notes individually before determining whether Plaintiff wrote them with such "substantial contemporaneity" with their underlying events as to render them admissible present sense impressions. *U.S. v. Manfre*, 368 F.3d 832, 840 (8th Cir. 2004); *Lopez v. Pyron*, 4:11-CV-891 CEJ, 2013 WL 1029330, at *3 (E.D. Mo. Mar. 14, 2013). If the notes fail to qualify as present sense impressions, then pursuant to Federal Rule of Evidence 803(5), they may be read into evidence, provided Plaintiff demonstrates that they qualify as recorded recollections.[5]

## VII. DEFENDANTS' MOTION *IN LIMINE* NO. 6 TO EXCLUDE STATEMENTS RELATING TO PLAINTIFF'S DEFAMATION CLAIM

In their motion, Defendants seek to exclude Jeff Bishop's alleged statements that were the subject matter of Plaintiff's defamation claim. Defendants claim these statements lack relevance, because they fail to establish that Plaintiff's drug addiction or medical leave caused Defendants' employment decisions.

Defendants now agree to the use of Bishop's statements to Jim Risch and James Baker. However, Defendants still contend that statements made to Thomas Beerman, an Ameren employee, have no bearing on this case. Plaintiff counters that Ameren, as Defendants' most important customer, largely influences the employment decisions of Defendants. Therefore, Plaintiff asserts that Beerman's knowledge of Plaintiff's drug use could have contributed to Plaintiff's discharge.

---

[5]To read the notes into evidence as recorded recollections, Plaintiff must make three showings: (1) the notes must pertain to "a matter the witness once knew about but now cannot recall well enough to testify fully and accurately," (2) the notes were "made or adopted by the witness when the matter was fresh in the witness's memory," and (3) the notes "accurately reflect[] the witness's knowledge." Fed. R. Evid. 803(5).

To resolve this matter, the Court will allow Defendants to make an offer of proof outside the presence of the jury. At that time, the Court will determine whether Beerman had such substantial connections to Defendants that he could have contributed to Plaintiff's discharge.

## VIII. PLAINTIFF'S SECOND MOTION *IN LIMINE* TO EXCLUDE EVIDENCE

Plaintiff seeks to exclude two matters that he claims are irrelevant: (1) evidence relating to Plaintiff's medical treatment by Dr. Diane Adkison, and (2) the deposition of Scott Harmon, Plaintiff's supervisor at Asplundh Tree Expert Company.

### A. Evidence Relating to Plaintiff's Medical Treatment by Dr. Diane Adkison

First, Plaintiff argues that evidence of Plaintiff's medical treatment by Dr. Diane Adkison should be excluded, because it has no bearing on Defendants' reasons for demoting and discharging Plaintiff and it therefore lacks relevance. Plaintiff states that, "[a]t most, Dr. Adkison can testify that [Plaintiff] took one Vicodin pill prescribed by his dentist two days before seeking treatment with Dr. Adkison in July 2011," and Dr. Adkison lacks any further knowledge of Plaintiff's medical conditions.

In light of the Court's ruling on the meaning of § 213.010(4), the Court finds that this evidence is relevant to whether Plaintiff had a "current" addiction to a controlled substance under the MHRA. Accordingly, Plaintiff's motion to exclude this evidence will be denied.

### B. The Deposition of Scott Harmon

Second, Plaintiff seeks to exclude the deposition of Harmon. Plaintiff argues this information lacks probative value because Defendants did not rely on it in making their employment decisions, as Harmon only became Plaintiff's supervisor after his discharge from Shade Tree. Defendants counter that Harmon's deposition is relevant to whether Plaintiff met an affirmative duty to reasonably seek and maintain employment after his discharge from Shade Tree.

13

The Court agrees that Harmon's testimony is relevant to whether Plaintiff reasonably sought and maintained employment after his termination from Shade Tree. The Court will therefore allow Defendants to offer Harmon's deposition.

## IX. DEFENDANTS' MOTION *IN LIMINE* NO. 7 TO EXCLUDE UNTIMELY-DISCLOSED EXPERT OPINIONS

Defendants seek to exclude a newly supplemented version of Dr. Tabak's report, which accounts for Plaintiff's post-Shade Tree employment. Defendants argue that the supplemental report violates this Court's Amended Case Management Order [ECF No. 22], because Plaintiff served it after the July 29, 2013 deadline. Defendants claim that because of its untimely submission, the supplemental report greatly prejudices them. Moreover, Defendants claim that Dr. Tabak's original report excluded consideration of his post-Shade Tree employment due to Plaintiff's own failure to properly disclose such employment under oath. Therefore, Defendants ask this Court to exclude Dr. Tabak's new supplemental report pursuant to Federal Rule of Civil Procedure 37(c)(1), which states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information ... at a trial, unless the failure was substantially justified or harmless."

In assessing whether Rule 37(c)(1) mandates exclusion of the undisclosed information, the Court looks to four factors: (1) the importance of the testimony, (2) the reason for the party's failure to comply with the disclosure requirements, (3) the potential prejudice to the party adversely affected by admission of the testimony, and (4) the feasibility of a continuance to cure potential prejudice. *Bennett v. Int'l Paper Co.*, No. 05-38 (PJS/RLE), 2008 WL 5130873, at *2 (D. Minn. Aug. 29, 2008); *see also Citizens Bank of Batesville, Ark. v. Ford Motor Co.*, 16 F.3d 965, 966 (1994). As to the first factor, the Court finds Dr. Tabak's testimony essential to establishing actual damages. The second factor, however, weighs against admission of Dr. Tabak's supplemental report, as

Plaintiff could have avoided the untimely disclosure by truthfully testifying in his deposition. Third, admission of the report would prejudice Defendants, as they will have no meaningful opportunity to vet Dr. Tabak before trial. Fourth, a continuance seems infeasible only days away from trial, and in any event, would merely reward Plaintiff's failure to properly disclose material information. Accordingly, the Court will balance the importance of Dr. Tabak's testimony and the danger of unfair prejudice to Defendants by admitting Dr. Tabak's new supplemental report with an adverse jury instruction, which will allow the jurors to consider the manner in which Plaintiff's post-Shade Tree employment was disclosed to Defendants.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion *in Limine* to Exclude Evidence [ECF No. 65] is **GRANTED, in part,** and **DENIED, in part**.

**IT IS FURTHER ORDERED** that Defendants' Motion *in Limine* No. 1 to Exclude the Testimony of Dr. Karen Tabak [ECF No. 69] is **HELD IN ABEYANCE, in part,** and **DENIED, in part**.

**IT IS FURTHER ORDERED** that Defendants' Motion *in Limine* No. 2 to Exclude Evidence of, and References to, Front-Pay Damages [ECF No. 71] is **HELD IN ABEYANCE**.

**IT IS FURTHER ORDERED** that Defendants' Motion *in Limine* No. 3 to Exclude Coworker Personnel Records [ECF No. 73] is **GRANTED, in part,** and **DENIED, in part**.

**IT IS FURTHER ORDERED** that Defendants' Motion *in Limine* No. 4 to Exclude Deposition Transcripts [ECF No. 75] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion *in Limine* No. 5 to Exclude Plaintiff's Handwritten Notes [ECF No. 77] is **HELD IN ABEYANCE**.

**IT IS FURTHER ORDERED** that Defendants' Motion *in Limine* No. 6 to Exclude

Statements Relating to Plaintiff's Dismissed Defamation Claim [ECF No. 79] is **DENIED, in part,** and **HELD IN ABEYANCE, in part**.

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion *in Limine* to Exclude Evidence [ECF No. 86] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion *in Limine* No. 7 to Exclude Untimely-Disclosed Expert Opinions [ECF No. 91] is **DENIED.**

So Conditionally Ordered this 16th day of August, 2013.

*[signature: E. Richard Webber]*

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE